# United States District Court
# Northern District of Indiana
# Hammond Division at Lafayette

| | |
|---|---|
| DEBORAH PARIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 4:08-CV-71 JVB |
| | ) |
| FAITH PROPERTIES, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Deborah Paris sued Defendants Faith Properties, Inc., Faith Christian School, and Scott Grass alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1981, and asserting Indiana state law claims of defamation and breach of contract. This matter is before the court on the Defendants' Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim.

### A. Legal Standard

The standard for a motion to dismiss for want of subject matter jurisdiction is "rigorous." *Gammon v. GC Serv. Ltd. P'ship*, 27 F.3d 1254, 1256 (7th Cir. 1994). Under the substantiality doctrine, a district court has federal question jurisdiction "only if the complaint shows, on its face, that a federal claim is 'sufficiently substantial.'" *Johnson v. Orr*, 551 F.3d 564, 570 (7th Cir. 2008). "[I]f a federal claim is 'immaterial to the true thrust of the complaint and thus made solely for the purpose of obtaining jurisdiction' or if the federal claim is 'wholly insubstantial and frivolous,'" then the court must dismiss the complaint for lack of subject matter jurisdiction. *Greater Chicago Combine and Ctr., Inc. v. City of Chicago*, 431 F.3d 1065, 1069 (7th Cir. 2005)

(quoting *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1182 (7th Cir. 1989)).

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). As the Supreme Court has stated, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly,* 550 U.S. at 556). A court will view all well-pleaded allegations in a light most favorable to the plaintiff. *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2009).

**B. Background and Facts**

In August 2006 Deborah Paris began working as a teacher at Faith Christian School, a private school located in Lafayette, Indiana. (Complaint, ¶ 13). Paris alleges that a month later, a fifteen year old male student made public statements to her son and others, indicating that he "wanted to engage in perverse sexual acts" with her. (*Id.*, ¶ 29). Though the student was made to apologize to Paris, disciplined with demerits, and removed from a sports team, both she and her husband complained to school administrator Scott Grass that the discipline was too lenient. (*Id.*,

2

¶¶ 29-30). Grass informed Paris's husband that any subsequent incidents would be dealt with more severely. (*Id.*, ¶ 31).

In August 2007 Paris entered into an employment contract with the school for the 2007–08 academic year. (*Id.*). Paris alleges that in November 2007 another student at the school made sexually explicit comments to her son and other students. (*Id.*, ¶ 33). As punishment, the student received demerits and apologized to Paris. (*Id.*). As a result of what she felt was lax discipline, Paris withdrew her son from the school and informed Grass that she would seek legal recourse. (*Id.*, ¶¶ 34-36).

Paris alleges that weeks later she received an email from an unknown sender that "made homosexual overtones and propositions." (*Id.*, ¶ 39). Paris believed that the email was generated by Faith Christian School students and immediately reported the incident to Grass, who said he would investigate the matter. (*Id.*, ¶¶ 40, 42).

Paris alleges that at her semester review Grass and Principal Jonathan Lambeth asked why she had removed her son from the school and inquired about the state of her marriage. (*Id.*, ¶ 74). Paris alleges that because she refused to answer such questions, Grass indicated that her employment would be terminated. (*Id.*, ¶¶ 75-76).

On December 22, 2007, Paris received a letter from Grass terminating her employment with the school. (*Id.*, ¶ 63). Paris alleges that the letter stated that she had antagonism toward the school, was not orderly, and lacked an excellent attitude. (*Id.*). According to Paris, the letter was also sent to the school's CFO, Bob Leffew, and other unnamed individuals. (*Id.*, ¶ 66).

On September 17, 2008, Paris filed suit against the Defendants. (DE 1). Following a

hearing on January 30, 2009, Paris was granted leave to amend her complaint. (DE 25). She did so on February 26, 2009. (DE 26). On June 12, 2009, Paris was again granted leave to amend her complaint. (DE 47).

In her Second Amended Complaint, filed on June 16, 2009, Paris alleges the following: (1) the school's decision to terminate her employment constituted sexual harassment because it was based upon her husband's alleged disapproval of her continued employment (Complaint, ¶ 21); (2) she suffered sexual harassment and a hostile work environment as a result of the Defendants' failure to take reasonable action against student sexual harassment (*Id*., ¶ 49); (3) the Defendants breached their employment contract with her by dismissing her without cause (*Id*., ¶¶ 54-58); (4) the Defendants committed defamation by making false statements regarding her professional conduct in her termination letter, which was sent to individuals within the school (*Id*., ¶¶ 63-71); and (5) she was fired in retaliation for her earlier complaints of sexual harassment. (*Id*., ¶ 77).

C. Discussion

(1) *The Defendants' Motion to Dismiss under the Substantiality Doctrine*

The Defendants first argue that this court lacks subject matter jurisdiction over Paris's claims because they are not sufficiently substantial to support federal jurisdiction. In support of this argument, the Defendants cite *Orr*, 551 F.3d 564, in which the plaintiff brought suit under a federal statute pertaining to the sale or lease of land. Because the plaintiff had neither sold nor leased land, the Court of Appeals stated that the plaintiff's claim was "insubstantial and frivolous" and found that the court did not have subject matter jurisdiction over the claim. *Id*. at 570.

The Court of Appeals has cautioned that "only the 'most extreme' cases will be so frivolous as to be insubstantial."*Archbold v. N.W. Cmty. Hosp.*, No. 98-4313, 1999 WL 518933, at *2 (7th Cir. July 16, 1999) (quoting *LaSalle Nat'l Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 143 (7th Cir. 1996)). Paris's complaint does not present such a case. While the Defendants dispute whether the behavior alleged in Paris's complaint rises to the level of sexual harassment capable of creating a hostile work environment, Paris's claims involve allegations that the school did not appropriately respond to the sexually exploitative statements her students made about her. As such, the behavior Paris describes constitutes an appropriate subject matter for a Title VII claim. Indeed, as the Defendants acknowledge in their brief in support of the present Motion to Dismiss, plaintiffs within this circuit have brought suit under Title VII for claims arising out of the inappropriate behavior of their students. (DE 50 at 5) (discussing *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 723 (7th Cir. 2009)). Because Paris's complaint presents a situation that may be actionable under federal law, her case is not analogous to *Orr* and will not be dismissed under the substantiality doctrine.

**(2)** *Sexual Discrimination*

In Count I of her Second Amended Complaint, Paris alleges discrimination on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1981. The latter claim is curious in light of the fact that § 1981 deals with racial discrimination in the making and enforcement of contracts. *See* The Civil Rights Act of 1991, Pub. L. No. 102-166, § 101, 105 Stat. 1071, (1991) (in which the section amending 42 U.S.C. § 1981 is titled "Prohibition Against All Racial Discrimination in the Making and Enforcement of Contracts"); *Gratz v. Bollinger*, 539 U.S. 244, 276 n. 23 (2003)

(stating that § 1981 was "meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race."). Therefore, the provision is inapplicable to Paris's gender discrimination claims. Since Paris's complaint contains no allegations regarding her race, she has failed to state a claim under 42 U.S.C. § 1981.

Turning to Paris's claim under Title VII, she alleges that her employment was terminated based upon her employer's belief that her husband no longer wished her to work. (Complaint, ¶ 21). Yet, Paris failed to support her conclusory statement with any factual allegations whatsoever. As such, under the standards set forth in *Ashcroft*, this court cannot reasonably infer that the Defendants are liable for any misconduct. *See Ashcroft*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citing *Twombly,* 550 U.S. at 556); *id.* at 1950 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)). With respect to Count I of her Second Amended Complaint, Paris's pleadings fail to comply with Rule 8 of the Federal Rules of Civil Procedure and are, therefore, subject to dismissal.

**(3)** *Hostile Work Environment*

In Count II of her Second Amended Complaint, Paris alleges that she was subject to a hostile work environment due to the school's failure to take reasonable action against student sexual harassment. Here, Paris provided the court with sufficient factual allegations to pass muster under Rule 8 and the standards set forth in *Ashcroft*. However, accepting as true all

factual allegations contained in her complaint, Paris fails to state a claim upon which relief can be granted because the behavior she describes does not rise to the level of creating a hostile work environment under Title VII.

To establish a *prima facie* case of a hostile work environment, Paris must ultimately be able to show that "1) she was subjected to unwelcome harassment, 2) the harassment was based on her sex, 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere, and 4) there is a basis for employer liability." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007) (citing *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002)).

In her response brief, Paris admits that her Count II allegations are similar to the facts presented in *Lucero*, 566 F.3d 720, where a teacher sued her former employer for its deliberate indifference to instances of sexual and racial harassment on the part of her students. In *Lucero*, the teacher complained about one instance in which a student held up a photograph of another student's naked buttocks in her class and another instance in which three students placed twenty playboy magazines in her classroom. *Id*. at 725-26. The teacher in *Lucero* alleged that the punishment given to the students was inadequate and, therefore, the school created a hostile work environment. *Id*. at 731. The Court of Appeals disagreed, stating that such isolated incidents did not constitute actionable harassing conduct. *Id*. at 732 ("these were isolated incidents that were neither sufficiently severe or pervasive to rise to the level of actionable harassing conduct.") (citing *Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir.1998) ("Relatively isolated instances of nonsevere misconduct will not support a claim of a hostile environment")). The Court of Appeals also noted that there was no basis for employer liability

in *Lucero* because the school disciplined the students involved in the incidents. *Id*. at 732 ("Although Lucero may disagree with the discipline imposed, her disagreement is subjective and does not establish unreasonableness or deliberate indifference.").

Although Paris argues that the *Lucero* court based its holding on the fact that neither of the aforementioned incidents was directed at the teacher, the opinion, in fact, contains no such assessment. The facts of *Lucero* are substantially similar to those outlined in Paris's Second Amended Complaint: both cases concern isolated incidents of student behavior and, with regard to the September 2006 and November 2007 occurrences, both cases present instances in which the schools did, in fact, punish the students in question. Thus, with regard to the September 4, 2006, incident (Complaint, ¶ 29) and the November 2, 2007, incident (*Id.*, ¶ 33), Paris failed to state a claim upon which relief can be granted under the principles set forth in *Lucero*.

Paris has also failed to state a claim with regard to the email from an unknown sender, which Paris alleges was a student in the school. (*Id.*, ¶ 39). The Court of Appeals for the Seventh Circuit has not found an objectively severe environment where a plaintiff: endured offensive comments from a supervisor over a period of seven months, *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1994), encountered instances of unwanted physical contact, including a poke to the buttocks, *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998), and was subjected to both sexually offensive comments and one instance of physical contact, *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003). Here, all of Paris's allegations taken together describe isolated occurrences which are neither sufficiently severe nor sufficiently pervasive to create an actionable hostile workplace. *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) ("the threshold for plaintiffs is high," because the workplace

that is actionable is one that is "hellish.") (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997)).

Finally, Paris alleges that students continued to make intimidating and harassing gestures toward her following the September 4, 2006, incident. (Complaint, ¶ 32). Yet, Paris does not allege that she ever reported such behavior to the school. Thus, Paris has failed to state a claim because the school cannot be deliberately indifferent to behavior of which it was unaware. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642 (1999) ("the district could be liable for damages only where the district itself intentionally acted" by "remaining deliberately indifferent to acts of teacher-student harassment of which it had *actual knowledge*.") (emphasis added). Therefore, Paris has failed to state a claim upon which relief may be granted in Count II of her Second Amended Complaint.

**(4)** *Retaliatory Discharge*

Paris also alleges that she was discharged in retaliation for complaining about her students' offensive behavior. Under Title VII it is unlawful for an employer to discriminate against his or her employees in retaliation for the employee making a charge related to Title VII. 42 U.S.C. § 2000e-3(a). The fact that Paris failed to state a claim for discrimination under Title VII is irrelevant to her retaliation claim. *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) ("[A]n employee may engage in protected activity under § 2000e-3(a) even if the conduct at issue does not violate Title VII") (citing *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457 (7th Cir. 1994)).

"To state a claim for retaliation under Title VII . . . a plaintiff must allege: 1) a statutorily

that is actionable is one that is "hellish.") (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997)).

Finally, Paris alleges that students continued to make intimidating and harassing gestures toward her following the September 4, 2006, incident. (Complaint, ¶ 32). Yet, Paris does not allege that she ever reported such behavior to the school. Thus, Paris has failed to state a claim because the school cannot be deliberately indifferent to behavior of which it was unaware. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642 (1999) ("the district could be liable for damages only where the district itself intentionally acted" by "remaining deliberately indifferent to acts of teacher-student harassment of which it had *actual knowledge*.") (emphasis added). Therefore, Paris has failed to state a claim upon which relief may be granted in Count II of her Second Amended Complaint.

**(4)** *Retaliatory Discharge*

Paris also alleges that she was discharged in retaliation for complaining about her students' offensive behavior. Under Title VII it is unlawful for an employer to discriminate against his or her employees in retaliation for the employee making a charge related to Title VII. 42 U.S.C. § 2000e-3(a). The fact that Paris failed to state a claim for discrimination under Title VII is irrelevant to her retaliation claim. *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) ("[A]n employee may engage in protected activity under § 2000e-3(a) even if the conduct at issue does not violate Title VII") (citing *Dey v. Colt Constr. & Dev. Co.,* 28 F.3d 1446, 1457 (7th Cir. 1994)).

"To state a claim for retaliation under Title VII . . . a plaintiff must allege: 1) a statutorily

protected activity; 2) an adverse employment action; and 3) a causal link between the protected activity and the employer's action." *Mounts v. United Parcel Service of America, Inc.*, No. 09 C 1637, 2009 WL 2778004, at *4 (N.D. Ill. Aug. 31, 2009) (citing *McClendon v. Ind. Sugars, Inc.,* 108 F.3d 789, 796 (7th Cir. 1997)). When "alleging illegal retaliation on account of protected conduct" a plaintiff "must provide some specific description of that conduct beyond the mere fact that it is protected." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007).

Paris states that "as a result of her complaining as to acts of sexual harassment and discrimination" the Defendants terminated her employment. (Complaint, ¶ 77). Earlier in her Complaint Paris provides more details about complaints she made to the Defendants regarding what she perceived to be sexual harassment. (*Id.*, ¶ 34). Since this is undoubtedly a protected activity within the scope of Title VII, Paris pleaded the criteria outlined in *Mounts*. *See supra*. Whether Paris will ultimately be able to prove her retaliation claim remains to be seen; however, she has alleged facts sufficient to support her claim at this stage of litigation. Therefore, Count V of Paris's Second Amended Complaint states a claim for retaliation under Title VII.[1]

**(5)** *Breach of Contract*

---

1      In addition to her Title VII retaliation claim, Paris alleges other causes of action in Count V of her Second Amended Complaint, including violations of Indiana tort and contract law as well as a violation of her parental rights. (Complaint, ¶ 78). Such vague accusations do not meet Rule 8's requirements. Therefore, in Count V of her Second Amended Complaint, Paris failed to state a claim for anything other than retaliation under Title VII.

In Count III of her Seconded Amended Complaint, Paris alleges that the Defendants breached her employment contract with the school. However, she has failed to attach any contract to her complaint. While her failure to do so would be detrimental under Indiana law, *see* Ind. Tr. R. 9.2, there is no analogous federal rule requiring that a contract be attached to a complaint for breach of contract. *Cardinal Contracting Corp. v. FMC Technologies, Inc.*, No. IP02-1063-C-T/K, 2002 WL 1751205, at * 2 (S.D. Ind. July 26, 2002) (stating that the plaintiff, "at its option, elected not to set forth the terms of the contract in the complaint and has committed no procedural violations under Rule 8 warranting dismissal for not doing so."). *See also* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1235 (3d ed. 2009) ("In pleading the existence of an express written contract, the plaintiff, at her election, may set it forth verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect.")

In order to state a claim for breach of contract, Paris must plead: "the existence of a contract, the defendant's breach thereof, and damages." *Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 365 (Ind. Ct. App. 2008) (quoting *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.,* 814 N.E.2d 649, 655 (Ind. Ct. App. 2004)). She has done so, alleging in her Second Amended Complaint that she entered into an employment contract in August 2007 for the length of the school year, that the Defendants breached the contract in December 2007 after they dismissed Paris for improper cause, and that she suffered damages in the form of lost wages. As such, Paris has provided the Defendant with sufficient notice of her claim and has, therefore, adequately stated a claim for breach of contract in Count III of her Second Amended Complaint.

**(6)** *Defamation*

In Count IV of her Second Amended Complaint, Paris alleges that she was defamed by a letter she received from Grass on December 22, 2007. Paris claims that the letter constitutes defamation *per se* because, if true, the statements contained therein would harm her in her profession. Communications are considered defamatory *per se* when they impute to the plaintiff one of the following: "1) criminal conduct; 2) a loathsome disease; 3) misconduct in a person's trade, profession, office, or occupation; or 4) . . . sexual misconduct." *Dugan v. Mittal Steel USA, Inc.*, 911 N.E.2d 692, 695-96 (Ind. Ct. App. 2009) (quoting *Trail v. Boys & Girls Clubs of N.W. Indiana*, 845 N.E.2d 130, 137 (Ind. 2006)). When a communication falls into one of the aforementioned categories, it eliminates a plaintiff's need to prove damages as a result of defamation. *See, e.g.*, *Henrichs v. Pivarnik*, 588 N.E.2d 537, 542 (Ind. Ct. App. 1992) ("If a communication is defamatory *per se*, then damages will be presumed."). Nonetheless, to state a claim for defamation *per se*, a plaintiff is still required to identify a communication having defamatory imputation, malice, and publication. *See Kelley v. Tanoos,* 865 N.E.2d 593, 596-97 (Ind. 2007).

The letter, which Paris attached to her complaint as an exhibit, states that, "the position of Faith Christian School is that in order for a Christian school administration and faculty to fulfill their collective mission, there must be proper order, an excellent attitude, and freedom from antagonism directed toward the leadership." (DE 48-2).[2] Even though the letter concerns

---

2   Because it is attached to Paris's complaint as an exhibit, the letter from Grass is considered part of the pleadings for the purposes of this motion to dismiss. *See* Fed. R. Civ. P. 10(c); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2009).

employment – a subject matter capable of qualifying as defamation *per se* – in order to have defamatory imputation, Grass's words must be "so obviously and naturally harmful that proof of their injurious character can be dispensed with." *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. Ct. App. 2000) (quoting *Moore v. Univ. of Notre Dame,* 968 F. Supp. 1330, 1334 (N.D. Ind. 1997)).

The statements in Grass's letter to Paris do not rise to this level. Grass's statements imply but do not directly state that Paris was disruptive to the school. In fact, the letter commends Paris for her talents as a teacher (DE 48-2) (". . . indeed you are talented and have been productive in many ways. For that we thank you"). Indiana courts have not found defamation *per se* where a communication contains language that is considerably more direct and derogatory than that found in Grass's letter. For instance, in *Levee*, 729 N.E.2d 215, a union leader called a school principal a "liar" and asserted that "she favored some staff." The Indiana Court of Appeals found that the words were not defamatory *per se* because they lacked the obvious and natural harm required by *Moore*. *Id.* at 220 (citing *Moore,* 968 F. Supp. at 1334). Similarly, in *Newman v. Jewish Cmty. Ctr. Ass'n. of Indianapolis*, 875 N.E.2d 729, 740 (Ind. Ct. App. 2007), the court found no defamatory imputation where a nursery school volunteer was told that she was "belligerent and demanding" and needed to "take care of the classroom and the children." Grass's statements are markedly milder than those found in *Levee* and *Newman* and they do not directly accuse Paris of any professional wrongdoing. Therefore, accepting as true all allegations contained in her complaint, Paris has not stated a claim for defamation.

**(7)** *Scott Grass*

The final matter at issue in the Defendants' Motion to Dismiss is whether Paris stated any

viable claims against Grass. In her response to the present Motion to Dismiss, Paris indicates that her only claims against Grass are contained in Counts IV and V of her Second Amended Complaint. (DE 55 at 8-9). Having previously determined that Paris failed to state a claim in Count IV, this Court need only consider whether Grass is an appropriate defendant in Paris's Title VII retaliation claim.[3]

As previously noted, Title VII makes it unlawful for an employer to discriminate against its employees in retaliation for the employee making a charge related to Title VII. 42 U.S.C. § 2000e-3(a). The Court of Appeals for the Seventh Circuit has recognized that the statute does not impose personal liability on agents of the employer. *Thanongsinh v. Board of Educ.*, 462 F.3d 762, 772 n. 7 (7th Cir. 2006) (citing *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490, 493 (7th Cir.1998)). Grass's role in the alleged retaliatory discharge was that of an agent acting on behalf of the school. Thus, Paris has failed to state a claim against Grass.

**D. Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss [DE 49] is **GRANTED** in part and **DENIED** in part. Because Paris stated a claim upon which relief can be granted against Defendants Faith Properties, Inc. and Faith Christian School in Counts III and V of her Second Amended Complaint, the Defendants' Motion to Dismiss is denied with respect to those claims. However, Defendant's Motion to Dismiss is granted with respect to Counts I, II, and IV of

---

3   In her responsive pleadings, Paris contends that her retaliation claim involves an "assertion of her rights to privacy as a parent and a spouse and other rights under Indiana contract and tort law." As previously explained, however, the only Count V claim that Paris pled with sufficient specificity under Rule 8 is her Title VII retaliation Claim. *See supra* n. 1. Therefore, the only inquiry remaining is whether Paris may sue Grass under Title VII for his alleged role in retaliating against Paris for her complaints of sexual harassment.

Paris's Second Amended Complaint, and with respect to Paris's claims against Defendant Scott Grass in Count V. Furthermore, because no claims against Scott Grass remain, he is dismissed as a Defendant in this lawsuit.

SO ORDERED on December 8, 2009.

                                                                 s/ Joseph S. Van Bokkelen
                                                              Joseph S. Van Bokkelen
                                                              United States District Judge
                                                              Hammond Division